*745 MURPHY, Circuit Judge,
concurring.
I concur in the court’s opinion but write separately to express my concern about what the record in this case reveals about the illicit trade in antiquities. The government’s motion was untimely under Rule 59(e), and I agree that the district court did not abuse its discretion by denying post judgment relief under Rule 60(b). The government was dilatory and failed to demonstrate “exceptional circumstances” at this point of the case, United States v. Young, 806 F.2d 805, 806 (8th Cir.1986), while the museum’s declaratory judgment action is pending.
The substantive issues underlying this litigation are of great significance, and not only to museums which responsibly seek to build their collections. The theft of cultural patrimony and its trade on the black market for stolen antiquities present concerns of international import. These issues affect governments and the international art and antiquities markets, as well as those who seek to safeguard global cultural heritage. Because of such concerns the United States has elsewhere brought multiple civil forfeiture actions against what have been identified as stolen antiquities and works of art. See, e.g., United States v. An Antique Platter of Gold, 184 F.3d 131, 134 (2d Cir.1999) (in rem civil forfeiture action brought in 1995).
In this matter the United States attempted to bring its claim under 19 U.S.C. § 1595a without pleading a violation of any other statute such as the National Stolen Property Act (NSPA), 18 U.S.C. § 2314, and thus avoiding the NSPA’s knowledge requirement. The government has successfully used civil forfeiture in the past to recover an object of cultural relevance without pleading a violation of a “predicate” statute. See United States v. One Lucite Ball Containing Lunar Material, 252 F.Supp.2d 1367, 1379 (S.D.Fla.2003) (government met probable cause burden that moon rock was “stolen” under § 1595a(c) by demonstrating that Honduras had title and had not authorized transfer, even though the rock had been brought into the United States). Here, the government pled in its proposed amended complaint that the dealers and the Saint Louis Art Museum “knew or were willfully blind” to facts including the Mask’s ownership by Egypt, ineligibility for private ownership, and lack of a proper license.[9]
Even good faith purchasers of art and ancient artifacts are required to be conscientious regarding provenance. As the Second Circuit noted in United States v. Davis, the “innocent owner” defense of the Civil Asset Forfeiture Reform Act (CAF-RA) is not available to claimants under § 1595a. 648 F.3d 84, 93-95 (2d Cir.2011). The drafters of CAFRA made the deliberate decision to exclude such claimants from such a defense. The nature of civil forfeiture under § 1595a is that even innocent owners may have to forfeit their property. Id. at 93. CAFRA’s drafters similarly exempted customs actions from that law’s more claimant friendly burden of proof. Id. at 95-96.
In Davis, the Second Circuit assumed without deciding that a nexus to international commerce is required in a civil forfeiture action under § 1595a. Noting the strength of a literal interpretation of the statute, the court also recognized a “strong argument” that § 1595a(c)’s contrary to law language “means exactly what it says: the government may seize and forfeit mer *746 chandise that is introduced into the United States illegally, unlawfully, or in a manner conflicting with established law, regardless of whether the law violated relates to customs enforcement.” Davis, 648 F.3d at 90. As the court acknowledges in this case, the NSPA provides a sufficient nexus to international commerce. See Davis, 648 F.3d at 90. I therefore do not agree that the government failed to cure its prior complaint’s deficiencies by listing other statutes as well as the NSPA in its amended complaint.
While this case turns on a procedural issue, courts are bound to recognize that the illicit sale of antiquities poses a continuing threat to the preservation of the world’s international cultural heritage. Museums and other participants in the international market for art and antiquities need to exercise caution and care in their dealings in order to protect this heritage and to understand that the United States might ultimately be able to recover such purchases.

. The mask was sold to the museum in 1998 by Phoenix Ancient Art, S.A. The proposed amended complaint alleges that the owners, Ali and Hicham Aboutaam, were each convicted in 2004 of smuggling ancient artifacts.